# UNITED STATES DISTRICT COURT
for the
## EASTERN DISTRICT OF WISCONSIN

*In the Matter of the Search of*

**3456A N. 15th Street, Milwaukee, WI**; more specifically described as the upper unit of a two story duplex with green siding, white trim, and light gray roof that is situated on the east side of N. 15th Street. The numbers "3456A" are in black with a white background affixed to the west side of the residence on the southern corner. The entry door to 3456A N. 15th Street faces south and has a black ornamental security door with a brass colored door knob and lock and flood light directly above the door.

**Case Number:** 11-M-254

## APPLICATION & AFFIDAVIT FOR SEARCH WARRANT

I, Jill Ceren, a federal law enforcement officer, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property:

**3456A N. 15th Street, Milwaukee, WI**; more specifically described as the upper unit of a two story duplex with green siding, white trim, and light gray roof that is situated on the east side of N. 15th Street. The numbers "3456A" are in black with a white background affixed to the west side of the residence on the southern corner. The entry door to 3456A N. 15th Street faces south and has a black ornamental security door with a brass colored door knob and lock and flood light directly above the door.

located in the Eastern District of Wisconsin there is now concealed: **Please see attached affidavit, which is hereby incorporated by reference.**

The basis for the search warrant under Fed. R. Crim. P. 41(c) is which is (check one or more):

✓ evidence of a crime;
✓ contraband, fruits of a crime, or other items illegally possessed;
✓ property designed for use, intended for use, or used in committing a crime;
❏ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

Title 21, United States Code, Sections 841(a)(1) and 846.

The application is based on these facts:

✓ Continued on the attached sheet, which is incorporated by reference.
❏ Delayed notice of _____ days (give exact ending date if more than 30 days:_____) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
Applicant's signature
Name and Title: Jill Ceren Special Agent DEA

Sworn to before me, and signed in my presence.

Date August 2, 2011

City and state: Milwaukee, Wisconsin

_____
Judge's signature
THE HONORABLE PATRICIA J. GORENCE
United States Magistrate Judge
Name & Title of Judicial Officer

## AFFIDAVIT IN SUPPORT OF SEARCH WARRANTS

I, Jill Ceren, having been duly sworn on oath, state as follows:

## I.    TRAINING AND EXPERIENCE

1.    I am a Special Agent with the Drug Enforcement Administration, and have been since 1990. I have specialized training and experience in narcotics smuggling and distribution investigations. During my tenure with the DEA, I have participated in over 100 narcotics investigations, and have authored over 100 affidavits supporting wire and electronic intercepts, criminal complaints, search and seizure warrants. I have debriefed more than 100 defendants, informants, and witnesses who had personal knowledge regarding major narcotics trafficking organizations. I am familiar with narcotics traffickers' methods of operation including the distribution, storage, importation, and transportation of narcotics, the collection of money which represents the proceeds of narcotics trafficking, and money laundering. Further, I have received training in the use of internet, electronic, and wire methods of operation of drug traffickers.

2.    I have participated in numerous investigations involving violations of federal, state, and local drug trafficking laws. I have had both formal training in and participated in numerous complex investigations including many investigations which utilized traditional law enforcement methods, including, but not limited to, interviews with citizen witnesses, interviews with confidential informants and sources, interviews with cooperating defendants, the gathering and analysis of information from various law enforcement agencies, the gathering and analysis of documentary evidence, consensually recorded conversations between confidential informants and targets of investigations, the analysis of pen register, trap and trace, and telephone toll data, collection of public source information, physical surveillance, GPS surveillance, search and seizure warrants, and court-authorized monitoring of wire and electronic communications.

1

3.    I am an investigative or law enforcement officer of the United States within the meaning of Title 18 United States Code, Section 2510(7), in that I am empowered by law to conduct investigations of and to make arrests for federal felony offenses.

## II.    LOCATIONS TO BE SEARCHED

4.    This affidavit is submitted in support of applications for search warrants to seek evidence of violations Title 21 United States Code, Sections 841(a)(1) (possession with the intent to distribute controlled substances) and 846 (conspiracy) at the below locations associated with Deandre HARSCH and others, who have committed, are committing, and will continue to commit the above offenses:

> a.    **2809 N. 86th Street, Milwaukee, WI** - more specifically described as a one and a half story residence with white siding, dark green trim, a black or dark gray roof that is situated on the west side of N. 86th Street. The numbers "2809" are in black with a white background and are affixed to the east side of the residence to the south of the front door. The front door is white and faces east with a white awning over it. There is a detached two car garage with white siding and two white overhead garage doors and a black or dark gray roof.
>
> b.    **3456A N. 15th Street, Milwaukee, WI** - more specifically described as the upper unit of a two story duplex with green siding, white trim, and light gray roof that is situated on the east side of N. 15th Street. The numbers "3456A" are in black with a white background affixed to the west side of the residence on the southern corner. The entry door to 3456A N. 15th Street faces south and has a black ornamental security door with a brass colored door knob and lock and flood light directly above the door.

## III.    SOURCES OF INFORMATION

5.    I have obtained the facts set forth in this affidavit through my personal participation in the investigation described below; from my review of text and call records, from oral and written reports of other law enforcement officers participating in this and related investigations, and from records, documents and other evidence obtained during this investigation. Since this affidavit is being submitted for the limited purpose of obtaining search

2

warrants for the above described premises, I have not included every fact known concerning this investigation. I have set forth only the facts I believe are essential to establish the necessary foundation for orders authorizing the search warrants for the above described premises.

## IV. PROBABLE CAUSE

6. On February 16, 2011, at approximately 1500 hours (PST), Los Angeles Police Department (LAPD) Detective Steve Winters was conducting surveillance on The UPS Store, located at 4859 West Slauson Avenue in Los Angeles, CA. Based upon prior investigations, this store is known to investigators as a common place for shipping narcotics and is generally not cooperative with law enforcement.

7. At approximately 1630 hours, Detective Winters' partners, LAPD Detectives Beshai and Rodriguez, both observed a silver, 4-door, 2004 Chrysler Pacifica hatchback bearing California license #6LXD184 entering the parking lot of The UPS Store. A male, later identified as Aaron Jackson, (M/B, DOB: 11/13/75), was in the driver's seat and a female, later identified as Takisha Johnson, (F/B, DOB: 5/22/78), was in the passenger's seat. The vehicle was later determined to be registered to Takisha Johnson, 647 West Century Boulevard, Los Angeles, CA.

8. Detectives Beshai and Rodriguez observed Jackson drive into the parking lot and park in front of The UPS Store. Jackson opened the rear hatchback and retrieved a newer looking box that was heavily taped at the seams and appeared to be heavy. Jackson went into the UPS Store, as Johnson stayed seated in the passenger seat of the vehicle. Rodriguez, with assistance of binoculars, had a clear view of inside the store. Rodriguez observed Jackson put the package on his shoulder and walk to the front counter, interact with the employee, and ship the box. Jackson left the store and entered the driver's side of his vehicle. Detectives Beshai, Rodriguez, and Winters saw Jackson pull out of the parking lot and turn south onto Fairfax.

3

Winters went into the store and examined the box that was in Jackson's possession for criminal indicators while Detectives Rodriguez and Beshai conducted surveillance on Jackson. Winters noticed the following information on the parcel: a return address of Joe Willis, 310-221-7324, 9032 Ramsgate Place, Los Angeles, CA 90045; a shipping address to 414-306-0413, Oni Brown, Apt. 19, 1527 N. Marshall St., Milwaukee, WI 53202-2049. The parcel was assigned tracking #1Z 866 R5V NY 5800 7028 and was being shipped to Wisconsin, which is known for receiving shipments of narcotics from the Los Angeles area. Detective Winters also determined that the parcel was being shipped "second day air," which is a common method for narcotics shippers because it allows for quick delivery and therefore, minimum detection by law enforcement. In addition, as noted above, Detective Winters observed that the box was heavily taped at the seams. This allows for narcotics shippers to mask the scent of narcotics in an attempt to avoid detection of the odor from law enforcement K-9s.

9.      Detectives Rodriguez and Beshai followed Jackson south on Fairfax to La Brea and eventually west on Century Boulevard. Jackson drove to the Michael's Arts and Crafts Store located at 3340 West Century Boulevard in Inglewood, CA. Jackson and Johnson parked in the parking lot and walked inside the store. Jackson exited the store and sat in the vehicle and a short time later, Johnson returned to the vehicle. Jackson drove west on Century Boulevard to the 99 Cent Store, located at 3220 West Century Boulevard. Johnson exited the vehicle and walked into the store. A short time later, she returned to the vehicle and Jackson drove west on Century Boulevard. Winters observed the silver 2004 Chrysler Pacifica make numerous traffic violations. Winters contacted the Inglewood Police Department to conduct a traffic stop. The occupants were positively identified as Aaron Jackson (M/B, DOB: 11/13/75) in the driver's seat and Takisha Johnson (F/B, DOB: 5/22/78) in the passenger's seat. Subpoenaed telephone records

4

determined that the telephone number listed on the return address of the parcel, 310-221-7324, was bogus. Using public sources, Detective Winters located a Facebook page for Takisha Johnson. The photograph of Takisha Johnson on the Facebook page matched Takisha Johnson's California driver's license photograph. The Facebook page listed Johnson's telephone number as 323-370-5750.

10. Subpoenaed telephone records for subscriber information and tolls for 323-370-5750 revealed the number lists to Takisha Johnson and that activity on the number began on or about March 9, 2010, and was still in use through the end of April 2011.

11. On February 17, 2011, Milwaukee Police Department (MPD) Detective Eugene Nagler spoke to LAPD Detective Winters about the above referenced suspicious package sent from Los Angeles to Milwaukee, Aaron Jackson, and Takisha Johnson. On February 18, 2011, Detective Nagler (who works with a drug detection canine) obtained a state search warrant to open a parcel being sent from Los Angeles, CA, to Oni Brown, 1527 N. Marshall St, Apartment 19, Milwaukee, WI. Inspection of the parcel in Milwaukee, Det. Nagler observed the parcel as a brown cardboard box, measuring approximately 18"x18"x12", bearing Air Bill #1Z866R5VNY58007028. The parcel was sent from Joe Willis, 310-221-7324, 9032 Ramsgate Pl., Los Angeles CA 90045, to 414-306-0413, Oni Brown, 1527 N. Marshall St., Apt. 19, Milwaukee WI. 53202. Upon opening the parcel pursuant to the search warrant, Det. Nagler discovered the parcel contained 6,000 grams of suspected cocaine (weight with container). The cocaine was in five (5) "brick" shaped blocks, wrapped in numerous layers of plastic wrap and plastic. Det. Nagler field tested the suspected cocaine and received positive results for the presence of cocaine. The five kilograms of suspected cocaine were contained within a Fender

5

amplifier. The amplifier was in a plastic wrapper inside the original box. The box was placed inside the brown cardboard box for shipping.

12. The parcel was subsequently delivered on the afternoon of February 18, 2011, to the Marshall Street apartment building. Upon delivery, a black female, subsequently identified as Redesya Brown, picked up the box from the entryway of the building. Brown was detained and questioned by police in Apartment 19 of the building. Det. Nagler spoke to Brown in the apartment and recorded the interview. Brown gave written and verbal consent to search her apartment and auto. Brown also gave written and verbal consent to download information from her cellular telephones.

13. During the consent search of Apartment 19, case agents located several items that were subsequently inventoried and placed in evidence, including the following items: a glass Pyrex measuring bowl with white powder residue in it; two partial boxes of sandwich baggies; a small scissors; a black cloth bag with the strong odor of cocaine on it; a partial roll of aluminum foil; an ammonia bottle, a blue vice (kilogram press), pliers, screwdriver, chisel, a respirator, and black bag. Based on my training and experience, and the investigation to date, I believe all of the above seized items are indicative of cocaine distribution in that they are all commonly used by drug traffickers to break down larger quantities of cocaine into smaller distribution amounts and to add weight to the cocaine to expand profits. Amongst the various documents seized, case agents located a UPS Drop-Off Package Receipt dated Friday December 17, 2010 at 4:20 p.m. for a package weighing 1.260 lbs. a tracking number 1ZT59Y330293927117. In addition to the seizure of the above items, case agents noted the apartment was barren of clothes, food, and household items that would normally indicate occupation as a resident.

6

14. Brown stated the apartment (1527 N. Marshall St., #19.) is listed in her name and she had rented the apartment on a month to month basis for the last year. Brown stated she pays the rent with a money order and usually get the money from "D Thomas." Brown described Thomas as a B/M, 25-35 yoa, 5'08" - 5'11," 170-190 lbs. Brown admitted she was being paid $900-1,000 to get the box for "D Thomas." Brown stated she was sending and receiving text messages to and from Thomas' cell phone, 414-519-9422. Brown stated Thomas had given her a cell phone specifically to communicate with him regarding this specific parcel, a silver Sanyo with telephone number 262-716-4132. Brown stated she was instructed to contact Thomas via text message at 414-519-9422. Brown stated Thomas gave her the cell phone to use, on Wednesday (02-16-2011). Brown stated Thomas also called and texted her from his other cell number, 414-369-0430. Brown stated she believed Thomas was in L.A. for the NBA All Star game. Brown stated she was paid $1,000 for getting a prior box containing narcotics for Thomas, at her apartment several months ago. Brown stated once the box arrived on this occasion, she was supposed to leave the box and silver Sanyo cell phone in the apartment and leave. Brown stated Thomas has his own set of keys to the apartment and would come and deal with the box on his own. Brown gave consent for the search of her vehicle parked outside the Marshall Street apartment building, a silver new model Impala.

15. Brown agreed to cooperate with law enforcement, and under the direction and control of Det. Nagler, she sent a text to Thomas at 414-519-9422 using her silver Sanyo cell phone, 262-716-4132, at approximately 4:30 pm, indicating "touchdown," meaning she had received the box containing the 5 kilograms of suspected cocaine. Brown received a text from "D Thomas" from 414-519-9422 at approximately 4:53 p.m., stating "Feels good 2 b able 2 move

7

around huh?" Brown texted "D Thomas" back at 414-519-9422 "Yes." Brown stated she had waited all day for the parcel and that is what she thought "D Thomas" was referring to in his text.

16. Case agents also talked to Brown about a series of text messages on the silver Sanyo referencing "Count?" "127240 plus" and "101000 is ready". Brown acknowledged she read the text messages but she was not sure what they meant. Brown stated she thought it was about money, but it was nothing to do with her.

17. Subsequent investigation revealed the following subscriber information: telephone number 414-369-0430 was activated January 13, 2011, with the name Deandre O. HARSCH, DOB: 6-9-78, at address 2355 N. 15th Street, Milwaukee, WI; telephone number 414-519-9422 is a U.S. Cellular prepaid account activated on February 5, 2011; and telephone number 262-716-4132 is a boost phone activated on September 6, 2010. A picture retrieved from another of Redesya Brown's cellular telephones showed HARSCH holding a large sum of U.S. currency.

18. UPS records indicate two other boxes were delivered to the Marshall Street apartment, one on October 9, 2010, and one on July 15, 2010. Both of these boxes came from the same UPS store in Los Angeles that was used in February 2011 to send the five kilograms of cocaine to Marshall Street. Brown told investigating agents that she received the October 9th box, but not the July 15th box. Brown remembered that she did not sign for the October 9th box or the February 18th box, and UPS records show no signature for those boxes. The July 15, 2010, box shows a signature of "Brown" by the person receiving the box. Travel records obtained to date show multiple short-duration trips by HARSCH between Milwaukee and Los Angeles in 2009, 2010, and 2011. The records reveal HARSCH was accompanied by Brown on a one-way trip which occurred June 27, 2010, from Milwaukee to Los Angeles. Marcus Cargile

8

accompanied HARSCH on four occasions in 2009 and 10 occasions in 2010 (all round trips), Dalisha Walker accompanied HARSCH on four occasions in 2010 and 2011 (two trips were one-way from Los Angeles to Milwaukee), and Tiffany Johnson accompanied HARSCH from February 17-23, 2011. HARSCH made a one-way trip from Milwaukee to Los Vegas on January 28, 2011, and HARSCH and Walker made a round trip to Las Vegas from Milwaukee from December 24-27, 2010. Car rental and internet travel service records further reveal that HARSCH rented vehicles and booked hotels on dates/times corresponding to the air travel records referenced above. The records reveal that HARSCH often left **414-369-0430** as his contact number.

19. On May 12, 2011, case agents conducted a proffer interview of Redesya Brown with her attorney. Brown again positively identified "D Thomas" or "D", by color photograph as Deandre O'Brien HARSCH (B/M, DOB: 6/9/78). Brown stated she also knows HARSCH to use the nicknames "SCO" or "BOSCO." Brown stated HARSCH has been out of prison for about two years, and has engaged in selling cocaine for this period. Brown estimated HARSCH started selling cocaine around the end of 2009, after enrolling in school but dropping out. HARSCH lived in an upper apartment at N. 84th St. and W. North Avenue (Wauwatosa, WI) after leaving prison. Brown put this apartment in her name. Brown stated HARSCH has had no legitimate means of employment since getting out of prison. Brown stated that she learned that HARSCH was selling cocaine in late 2009 because HARSCH told her that he had one or two kilograms of cocaine available at that time. HARSCH asked Brown to find customers for the cocaine.

20. One customer that Brown found for HARSCH was Lawrence "LO" Minor (identified in a photograph). Brown provided ½ kilogram quantities to Minor on about three occasions in the fall of 2010. Brown stated HARSCH and Minor were acquainted in prison, and

9

met once at Ralph's Coffee Shop on Lisbon Avenue in Milwaukee prior to Brown middling transactions between them. Brown was fronted the cocaine by HARSCH to deliver to Minor, and returned with Minor's money around 15 minutes later to complete the transactions. Brown verified Minor's money ($18,000) on each occasion and then paid HARSCH $17,000 when she met with him later. Brown picked up the cocaine from HARSCH at their Marshall St. apartment and on the street. HARSCH drove a white Yukon to these deals, but might be currently driving a black Tahoe or Yukon. HARSCH also has a purple and green "old school" car.

21. Brown identified another of her customers as "Nut," who lives in the area of N. 6th and Becher Streets in Milwaukee. Nut purchased 4 ½ ounce quantities from Brown on several occasions in 2010, all of which Brown obtained from HARSCH. Nut paid Brown $4,500 for each split (4 ½ ounces) and Brown paid HARSCH $4,000. Brown described Nut as a black male, 26-27, 5-10 to 6-0, stocky, muscular, lifts weights, wears braids. Nut drives a 92-93 white Olds sedan and fronted the money for the cocaine purchases to Brown.

22. Brown stated when she purchased cocaine from HARSCH, HARSCH was responsible for weighing and bagging the cocaine. Brown stated HARSCH was the person that was expecting the box of cocaine seized by the police at Brown's Marshall Street (Apartment 19) in February 2011. HARSCH had previously paid Brown for receiving another box at this apartment in the fall of 2010. Brown stated she had received the boxes for HARSCH as HARSCH was out of town when each box arrived. Brown stated both boxes she received were delivered by UPS.

23. Brown stated she has registered multiple vehicles for HARSCH, including one being driven by HARSCH's girlfriend, Dalisha WALKER (identified in a photograph). WALKER's vehicle is a 2002 silver BMW X5 which Brown registered in 2009. WALKER has

10

been HARSCH's girlfriend for two years, according to Brown, and works at Wal-Mart. Brown also registered a 95 Yukon, a GMC Envoy, and a 2004 Grand Prix.

24. Several criminal associates of HARSCH's known to Brown include Marcus Cargile (identified in a photograph), Mike Yarbrough (cousin of HARSCH), and Big Ant (recently deceased). According to Brown, Cargile flew with HARSCH to Los Angeles between five and ten times. Brown saw Cargile in May 2011 driving HARSCH in Cargile's red newer model Charger. Brown stated she learned from Reginald Brown that despite the seizure by the police in February 2011, HARSCH is still selling cocaine. According to Brown, Cargile sells small amounts of cocaine for HARSCH.

25. Brown stated HARSCH's cocaine source of supply is in California, but has never met the person. Brown stated HARSCH flew to California to meet the source, and did not drive out to meet him. Brown stated she flew with HARSCH to Los Angeles on one occasion in 2010, staying for two days. HARSCH rented a Navigator and picked up all the expenses of the hotel and entertainment while they were in LA. A person they had met while in L.A. was a black/male, bald head, 5'10" - 6'02", with a football player build, who was dating a model.

26. Brown stated Tiffany Johnson (identified in a photograph) has a child with Mike Yarbrough. Johnson lives on N. 15th Street in Milwaukee. Johnson drives a Jaguar and works at Wells Fargo Bank. Johnson accompanied HARSCH to Los Angeles in February 2011, when the box of cocaine was sent to Brown at the Marshall Street apartment.

27. Brown said she once mailed a box for HARSCH, via UPS, around mid-December 2010. HARSCH told Brown he was sending a gift to a girl in California, and did not want to use his name or address on the package so it would be a surprise. Brown paid the shipping and

11

HARSCH reimbursed Brown later. Brown estimated the box was about 12"x6"x6." HARSCH drove Brown in the white Yukon to the UPS facility on Rawson Avenue to send the package.

28. Brown said HARSCH has used a T-Mobile number 414-369-0430 for some time, but also uses prepaid phones to conduct drug transactions, including using text messaging. Brown said HARSCH uses Facebook as well, possibly with the name "Bosco Thomas."

29. Brown stated her father, Reginald Brown (M/B, DOB: 1/23/56, phone number 414-419-1652), is a user of cocaine, and might purchase cocaine from HARSCH as they frequent the same neighborhood on N. 15th Street. Reginald Brown has used this number for many years, according to Brown. Brown stated her father, Reginald Brown, told HARSCH the police seized the box in February from Brown at the Marshall Street apartment.

30. On June 9, 2011, Lawrence Minor provided information to case agents regarding Redesya Brown and others pursuant to a proffer agreement. Minor stated he was imprisoned on a drug charge from 2003 through January 2010. After being released, Minor heard on the streets that Redesya Brown (identified in a photograph) was doing well and able to supply cocaine. Minor stated he has known Brown for many years, as they both lived in the neighborhood of N. 44th and Center Streets in Milwaukee. Between January and September 2010, Minor had been selling 1/4 ounce quantities of cocaine. Around September 2010, Minor started associating with Willie Reaves, who was a fugitive from the police. Reaves, however, had access to money, and had a customer base for cocaine. Reaves agreed to finance purchases of cocaine, if Minor could find a supplier. Minor approached Redesya Brown around this time. After meeting up with Brown, she told him she could provide him cocaine and asked him to look for customers on her behalf. Brown, Minor, and Deandre HARSCH (identified in a photograph) met subsequent to Minor's initial meeting with Brown. HARSCH, who Minor knows as "Bosco," told Minor he

12

(HARSCH) had recently come home from prison. Minor stated he did not know if HARSCH was Brown's cocaine supplier at the time.

31. Minor, using Reaves' money, began purchasing ½ kilogram quantities of cocaine from Brown. These purchases occurred on 3-4 occasions between September 2010 and January 2, 2011, when Minor and WR were arrested. Minor stated in addition to the ½ kilogram purchases, he purchased 4 ½ and 9 ounce quantities from Brown, usually once a month. Minor stated that he had just purchased nine ounces from Brown prior to his January arrest, and that the two 4 ½ ounce quantities of cocaine found at the house he was arrested at were from her. Minor stated the 9 ounces of cocaine from Brown was in two chunks in two plastic baggies. Minor stated the cocaine in Reaves' shoe (107 grams) and the cocaine found in the kitchen (120 grams) also came from Brown. Minor stated the cocaine was purchased with Reaves' money. Minor stated the pricing for the 4 ½ ounce quantities varied, depending if Brown had cocaine available or not. Brown charged between $4,000 and $4,500 per 4 ½ ounces. The half kilograms were priced normally at $4,250 per split, making the purchase price for a ½ kilogram at $17,000. On one occasion, Minor only paid $16,000 to Brown for a ½ kilogram. Brown normally delivered the cocaine at MINOR's residence, 4112 A N. 14th Street, Milwaukee, WI and drove a silver, newer model Impala when she delivered the cocaine. Minor stated Brown sometimes indicated that the price would increase if she had to go somewhere else for the cocaine (meaning she did not have it readily available). Minor stated he believed that Brown had an out of town source for cocaine because of statements Brown made to him, including, "We sent the money off," and "It might be a week" (to get more cocaine). Brown often informed Minor about the quantity of cocaine she had available. For example, on one occasion, Brown told Minor, "I'm down to a half; do you want to come for it?" Minor said this indicated that Brown had a ½ kilogram

13

available for sale. Brown also said, "This is what's left, so come now," indicating that she was running low on cocaine. Minor stated sometimes he would have to wait a week or two for more cocaine from Brown after she ran out. When Brown had a new cocaine supply, she told Minor, "I'm good for the next month," or for the next three weeks. Minor stated it was easiest to get a ½ kilogram from Brown when she had just received a fresh supply of cocaine.

32.    Minor stated he carried two phones when dealing with Brown, a black LG, and a US Cellular touch phone. Brown changed her number several times over the period that Minor bought cocaine from her. Her number is stored in his phones under the contact "Rdsha."

33.    A check of one of Minor's phones showed the contact Rdeesha with the number 262-716-2906 listed in the phone. This number is subscribed to AAA AAA, PO Box 54988, Irvine, CA. The silver Sanyo phone (number 262-716-4132) used by Brown to text HARSCH when the box of cocaine arrived in Milwaukee is also subscribed to AAA AAA, PO Box 54988, Irvine, CA.

34.    Subscriber information for 414-519-9422 shows that the phone service was established as a prepaid account under the name Sam Doe with address 4241 W. Capitol Drive, Milwaukee, WI on February 5, 2011. Subscriber information for 414-369-0430 shows that the phone service was established under the name Deandre HARSCH, 2355 N. 15th Street, Milwaukee, WI on January 13, 2011.

35.    Subsequent lab analysis of the cocaine inside the box delivered to Redesya Brown shows that the parcel contained 4,979 grams of cocaine, a Schedule I controlled substance.

36.    Brown indicated that she was receiving the box for HARSCH while he was in Los Angeles. A check of travel records of HARSCH show that he has over two dozen trips between Milwaukee, WI, and Los Angeles, CA from September 2009 through June 2011.

14

37. The information provided by Redesya Brown has been corroborated by other confidential sources, surveillance, telephone toll records, and public records. For these reasons, I consider Brown's information to be reliable. Brown has no criminal history. Brown is hoping to receive consideration in connection with potential felony criminal charges which could be filed by the United States Attorney's Office in the Eastern District of Wisconsin. Brown is represented by counsel and has received a proffer letter the government.

38. The information provided by Lawrence Minor has been corroborated by other confidential sources, surveillance, consensual recordings, telephone toll records, and public records. For these reasons, I consider Minor's information to be reliable. Minor has a criminal history that includes two felony arrests. Minor is hoping to receive consideration in connection with felony criminal charges which have been returned by a grand jury in the Eastern District of Wisconsin. Minor is represented by counsel and has received a proffer letter the government.

39. Case agents obtained the following specific information regarding HARSCH's association with 2809 N. 86th Street, Milwaukee, WI:

    a.    A return of subpoena of records from Wisconsin Energies revealed the utilities at 2809 N. 86th Street, Milwaukee, WI have been listed in the name of Deandre HARSCH since 2009.

    b.    On July 27 and 28, 2011, case agents observed a 2007 Chevy Tahoe, bearing WI registration plate 260SLJ, parked directly in front of 2809 N. 86th Street. The vehicle lists to Deandre O. HARSCH at 3456A N. 15th Street, Milwaukee, WI.

    c.    A check of a law enforcement database lists 2809 N. 86th Street as the current residence of Deandre O. HARSCH.

    d.    Current court authorized electronic surveillance puts HARSCH's cell phone in the location of 2809 N. 86th Street since July 15, 2011. Cellular phone records show the last calls at night and the first calls of the next day are all in the area of N. 86th Street.

15

e.     A check with United States Postal Service revealed HARSCH currently receives mail at 2809 N. 86th Street, Milwaukee.

40.     Case agents obtained the following specific information regarding HARSCH's association with 3456A N. 15th Street, Milwaukee, WI:

    a.     The vehicle observed at 2809 N. 86th St. lists to Deandre O. HARSCH at 3456A N. 15th Street, Milwaukee.

    b.     Subpoenaed bank account and credit card information of HARSCH shows that the statements are sent to HARSCH at 3456A N. 15th Street, Milwaukee.

    c.     Subpoenaed travel records show that Deandre O. HARSCH uses 3456A N. 15th Street, Milwaukee, as his mailing address.

    d.     Wisconsin state court records list Deandre O. HARSCH at 3456 N. 15th Street & 3456 (A) N. 15th Street, Milwaukee. A check of a law enforcement database lists 3456A N. 15th Street as the current residence of HARSCH.

    e.     Property and utility records show that Tiffany Johnson, HARSCH's girlfriend, owns the residence at 3456/3456A N. 15th Street, Milwaukee, and is the current listed subscriber of utilities at 3456A N 15th Street.

    f.     Subpoenaed travel records revealed Tiffany Johnson flew with HARSCH to Los Angeles, CA, when the 5 kilograms of cocaine were intercepted in Milwaukee on February 18, 2011.

    g.     Toll and pen records from HARSCH's cell phone 414-369-0430 show that the telephone was used to contact phones subscribed to Tiffany Johnson more than 500 times from February through July 2011.

    h.     A check with United States Postal Service revealed HARSCH and Johnson currently receive mail at 3456A N. 15th Street, Milwaukee.

41.     Police reports and court records indicate the following criminal history for the below-listed individuals:

    a.     Deandre O. HARSCH (B/M, DOB: 06/09/1978) – 1995 felony conviction for battery of prisoners, 1996 felony conviction habitual criminality, 1999 misdemeanor conviction operate vehicle without consent, 1999 misdemeanor conviction resisting/obstructing and possession THC, 2002

16

felony conviction PWID cocaine, 2003 misdemeanor conviction resisting/obstructing and felony conviction bail jumping, and 2006 conviction possession of firearm by felon.

b.  Redesya Brown (B/F, DOB: 03/26/1981) – no criminal history.

c.  Lawrence D. Minor (B/M, DOB: 10/01/1977) – 2003 felony conviction PWID cocaine base.

d.  Aaron Jackson (B/M, DOB:11/13/1975) – no criminal history.

e.  Takisha Johnson (B/F, DOB: 05/22/1978) – no criminal history.

f.  Marcus Cargile (B/M, DOB: 02/23/1984) – pled guilty to felony PWID cocaine, misdemeanor possession THC.

g.  Dalisha Walker (B/F, DOB: 03/12/1988) – no criminal history.

h.  Michael Yarbrough (B/M, DOB: 10/12/1978) – 2001 felony conviction PWID cocaine and 2011 felony conviction criminal damage to property.

i.  Tiffany Johnson (B/F, DOB: 11/10/1982) – 1999 misdemeanor conviction for false representation and 2002 misdemeanor theft conviction.

## V.   CONCLUSION

Based on the facts contained within this affidavit, I believe there is probable cause to believe that located within the above described locations associated with Deandre O. HARSCH and others, there is evidence, as detailed in Attachment A (Items to be Seized), of violations of Title 21, United States Code, §841(a)(1) (possession with the intent to distribute controlled substances) and §846 (conspiracy).

17

# ATTACHMENT A - Items to Be Seized

1. Paraphernalia associated with the manufacture and distribution of controlled substances, including but not limited to scales and other measuring devices, packaging materials, containers to hold controlled substances, and documents related to the manufacture, harvesting, distribution, sale, or possession of controlled substances.

2. Duffel bags, suitcases, plastic containers, shipping boxes, or other containers used to hold, ship, or transport controlled substances.

3. Proceeds of drug trafficking activities, such as United States currency, precious metals, financial instruments, and jewelry, and documents and deeds reflecting the purchase or lease of real estate, vehicles, precious metals, jewelry or other items obtained with the proceeds from drug trafficking activities.

4. Bank account records, loan documents, wire transfer records, money order receipts, postal express mail envelopes, UPS, FedEx, and other mail service receipts and records, bank statements, safes, safe deposit box keys and records, storage location keys and records, money containers, financial records and notes showing payment, receipt, concealment, transfer, or movement of money generated from the sale of drug trafficking activities, or financial transactions related to drug trafficking activities.

5. Drug or money ledgers, drug distribution or customer lists, drug supplier lists, correspondence, notations, logs, receipts, journals, books, records, and other documents noting the price, quantity, and/or times when controlled substances were obtained, transferred, sold, distributed, and/or concealed lists of customers and related identifying information; types, amounts, and prices of drugs trafficked as well as dates, places, and amounts of specific transactions.

6. Personal telephone books, address books, telephone bills, photographs, letters, cables, telegrams, facsimiles, personal notes, e-mails, documents and other items or lists reflecting names, addresses, telephone numbers, addresses, and any communications regarding among and between members and associates involved in drug trafficking activities.

7. Records of off-site storage locations, including but not limited to safe deposit box keys and records, and records and receipts and rental agreements for storage facilities.

8. Cellular telephones, SmartPhones, pagers, text messaging systems, and other communication devices, including devices capable of sending, receiving, or storing e-mails, and any and all records associated with such communications services.

9. Records, items and documents reflecting travel for the purpose of participating in drug trafficking activities, such as passports, airline tickets, bus tickets, vehicle rental receipts, credit card receipts, taxi cab receipts, hotel and restaurant receipts, canceled checks, maps, and records of long distance calls reflecting travel.

11.     Indicia of occupancy, residency, or ownership of the premises and things described in the warrant, including utility bills, telephone bills, loan payment receipts, rent receipts, trust deeds, lease or rental agreements, addressed envelopes, escrow documents, and keys.

12.     Photographs, videotapes or other depictions of assets, coconspirators, controlled substances, or other activities related to drug trafficking activities.

13.     Any computers or electronic media that were or may have been used as a means to commit the offenses described on the warrant. For any computer hard drive or other electronic media (hereinafter, "MEDIA") that is called for by this warrant, or that might contain things otherwise called for by this warrant:

   a.  evidence of user attribution showing who used or owned the MEDIA at the time the things described in this warrant were created, edited, or deleted, such as logs, registry entries, saved usernames and passwords, documents, and browsing history;

   b.  passwords, encryption keys, and other access devices that may be necessary to access the MEDIA; and

   c.  documentation and manuals that may be necessary to access the MEDIA or to conduct a forensic examination of the MEDIA.

14.     Records and things evidencing the use of the Internet to communicate, including routers, modems, and network equipment used to connect computers to the Internet; records of Internet Protocol addresses used; records of Internet activity, including firewall logs, caches, browser history and cookies, "bookmarked" or "favorite" web pages, search terms that the user entered into any Internet search engine, and records of user typed web addresses.

15.     As used above, the terms "records" and "information" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including any form of computer or electronic storage (such as hard disks or other media that can store data); any handmade form (such as writing, drawing, painting); any mechanical form (such as printing or typing); and any photographic form (such as microfilm, microfiche, prints, slides, negatives, videotapes, motion pictures, photocopies).